# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 19-1543V
UNPUBLISHED

| | |
|---|---|
| ELIZABETH JOHNSON,<br><br>              Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>              Respondent. | Chief Special Master Corcoran<br><br>Filed: April 19, 2023<br><br>Special Processing Unit (SPU); Entitlement to Compensation; Ruling on the Record; Findings of Fact; Statutory Six Month Requirement Influenza (Flu); Shoulder Injury Related to Vaccine Administration (SIRVA) |

*Kathleen Margaret Loucks*, Lommen Abdo Law Firm, Minneapolis, MN, for petitioner.

*Parisa Tabassian*, U.S. Department of Justice, Washington, DC, for respondent.

### **RULING ON ENTITLEMENT AND DECISION AWARDING DAMAGES**[1]

On October 3, 2019, Elizabeth Johnson filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine administered on October 5, 2018. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this unpublished fact ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the fact ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons described below I find that Petitioner is entitled to compensation, and I award **$50,000.00** in damages, representing compensation for actual pain and suffering, plus **$877.46** for out-of-pocket unreimbursed expenses.

## I. Relevant Procedural History

Petitioner filed this claim on October 3, 2019. ECF No. 1. On April 9, 2021, respondent filed a status report stating that he was willing to engage in tentative settlement discussions. ECF No. 43. The parties engaged in settlement discussions thereafter but were unable to come to an agreement. Accordingly, Respondent thereafter filed a Rule 4(c) Report contesting entitlement on December 1, 2021. ECF No. 54.

On December 7, 2021, Petitioner filed a status report requesting permission to file a motion for a ruling on the record. ECF No. 58. Petitioner did so on February 14, 2022. Petitioner's Motion for a Ruling on the Record ("Mot."), ECF No. 61. Petitioner argues therein that she meets the table definition of a SIRVA (*id.* at 8-14), and requests an award of $100,000.00 for actual pain and suffering, plus $1,070.76 for unreimbursed out-of-pocket expenses. *Id*. at 17-23.

Respondent filed a response on February 18, 2022. Respondent's Response to Petitioner's Motion for a Ruling on the Record ("Opp."), ECF No. 62. Respondent argues that Petitioner has not met the severity requirement of the Vaccine Act (*id.* at 11-12), and has not otherwise met the requirements of a Table claim (*id.* at 12-14). Respondent also argues that, if Petitioner can establish compensation, an award of not-more-than $50,000.00 for pain and suffering is more appropriate in this case. *Id.* at 15. Further, Respondent agrees to $804.51 of the out-of-pocket expenses, but objects to the remainder. *Id.* at 21-22.

Petitioner filed a reply on February 25, 2022, addressing Respondent's arguments. Petitioner's Reply ("Reply"), ECF No. 65.

## II. Petitioner's Medical Records

Prior to the relevant vaccination, Petitioner was seen intermittently beginning in 2011 for neck, back, and shoulder pain. *See* Ex. 6 at 7 (noting Petitioner had a history of lower back pain "since she had a car accident several years ago"); Ex. 12 at 2-3 (care for injuries associated with jumping off a dock onto a raft). She also obtained periodic chiropractic care to treat neck and back pain. *See, e.g.*, Ex. 20 at 11-12 (record from December 15, 2015 for care related to cervical spine tension and headaches); Ex. 4 at 29-30 (record from 2016 for care related to upper back and shoulder pain).

Petitioner received a flu vaccine in her left shoulder on October 5, 2018, at her place of employment, North Memorial Medical Center. Ex. 1 at 1, Ex. 3 at 1.[3] Three weeks later, on October 26, 2018, Petitioner saw Dr. Graff at Caron Chiropractic. Ex. 4 at 57-58. She reported that she had a flu shot "earlier this week" and had experienced a lot of aching in her left arm, shoulder, and pectoral area "since then." She also stated that it "felt like her veins were 'pulsing' in her left pectoral area the day following." *Id.* at 57. Dr. Graff performed manual chiropractic manipulation and acupuncture. *Id.* at 57-58.

Petitioner saw Dr. Graff again on November 9, 2018. The record notes that "[Petitioner] states her shoulder was sore for another 1-2 days, but then back to normal. She states her low back is sore and would like to work on that today." Ex. 4 at 59-60.[4] This record was later changed in February of 2020 at Petitioner's request to state that she "is still experiencing shoulder pain, but would prefer to focus on her low back pain today." Ex. 10 at 1.

Dr. Graff provided additional details with regard to this change in a letter to Esther Novak, a paralegal at Lommen Abdo, P.A. dated October 12, 2020. Ex. 17. Dr. Graff indicated Petitioner had emailed him on February 1, 2020 and set forth the reason for the request. Specifically, Petitioner was seeking coverage for "ongoing needs associated with the shoulder injury but they're bringing into question Dr. Tim [Graff]'s note from this date of service and for me to be covered to the extent I need to be I would need him not to have any specifiers like 'less, normal, mild, I'm hoping we can agree upon a blanket, generalized statement such as 'experiencing shoulder pain but would like to focus on her back today'…" Ex. 17 at 2. Dr. Graff further stated:

> I do recall the initial visit on 10/26/2018 and discussing her left arm/shoulder/pectoral pain following her flu shot in this region. She was wanting to try some acupuncture in that region, since she has done that before with me for low back pain with some success. **I recall it seemed odd she did not seem to want to discuss her left arm/shoulder/pectoral symptoms on the subsequent visit 11/9/2018.** We therefore focused more on her symptomatic lumbar

---

[3] Respondent noted that any benefits received from a worker's compensation claim would offset any compensation awarded in the Vaccine Program. Opp. at 4 n.1. Petitioner requested workers' compensation records for any and all dates of injury from 2018 to present and was told that no such files were found. Ex. 23.

[4] Petitioner requested an addendum to the November 9, 2018, record on or about January 30, 2020. Ex. 16 at 1. In response to her request, Dr. Graff noted that the addendum would include a time stamp, and included a draft edit with Dr. Graff's additional commentary of "Here Is what I will put and maybe your legal counsel can advise." *Id.* at 2.

>spine with acupuncture in this region only and chiropractic adjustments of the cervical, thoracic, and lumbar spine.

*Id.* (emphasis added).

Petitioner returned to Dr. Graff on November 23, 2018, and reported she was "mainly having some low back pain today". Ex. 4 at 61. There is no discussion of shoulder pain, and no specific care related to her shoulder. Petitioner again saw Dr. Graff on December 7, 2018, for soreness in her lower back, upper back, and neck. Dr. Graff performed manual chiropractic manipulation therapy and acupuncture on various joints bilaterally in Petitioners' back and trapezius muscles. *Id.* at 63-64.

Petitioner saw P.A. Sarah Ake on December 28, 2018, for medication management and lab work. Ex. 6 at 9. P.A. Ake noted that Petitioner has a history of low back pain that "originally occurred after she had an injury after jumping of[f] a dock with whiplash several years ago." *Id.* The records do not include any reports of shoulder pain, and an evaluation of Petitioner's extremities noted "[f]ull range of motion x4 extremities." *Id.* at 10.

On March 13, 2019, Petitioner saw Dr. Leslie Norton for "sore left shoulder after influenza injection on 10-5-2018…." Ex. 6 at 13. Petitioner reported that "she started having soreness" that night, and "[o]ver the next 3 days the pain was more bothersome and she had pain and achiness that spread from the shoulder to the anterior superior part of the left upper chest." Petitioner reported that her pain was moderate, "about a 7 out of 10." She also reported the pain has progressively increased, and her range of motion has decreased. *Id.* at 13. A shoulder exam showed reduced range of motion in Petitioner's left shoulder when compared to the right, but normal strength. She was diagnosed with chronic left shoulder pain, bursitis, and stiffness.

Petitioner began physical therapy on March 26, 2019. Ex. 7 at 1-4. Petitioner stated that the onset of her pain was October 5, 2018. *Id.* An examination indicated Petitioner had loss of range of motion, and her pain was described as "2-3/10". *Id.* at 5. She attended a second physical therapy session on May 6, 2019. Ex. 7 at 10-14. She now described her pain as "mild aching tip of l[eft] [shoulder]". *Id.* at 10. Her pain level was characterized as "1/10", with ranges of "1-5/10". *Id.* Additionally, Petitioner's general program compliance was described as poor. *Id.*

On August 19, 2019, Petitioner saw Dr. Norton for left shoulder pain. Ex. 9 at 2. Dr. Norton noted that Petitioner went to physical therapy twice and was treated by a chiropractor, but "[d]id minimal yard w[ork] and she is much worse…now not able to do

4

the exercise that she learned." *Id.* Ibuprofen, theracane, and prednisone were prescribed thereafter. *Id.* 2-4.

Petitioner presented to Spine and Sports Chiropractic on February 3, 2020, for various ailments including left shoulder bursitis from a flu vaccine in October of 2018. Ex. 11 at 5. She next sought care for lower back pain, left shoulder pain, knee pain, and neck tension on February 10, 2020. *Id.* at 2. With regard to her left shoulder pain, it was rated as one-to-two out of ten on average, but ranged from zero-to-six out of ten. *Id.*

Petitioner returned to Spine and Sports Chiropractic on October 16, 2020, reporting lower back pain, knee pain, and left shoulder pain. Ex. 22. she described the shoulder pain as low grade, but a daily occurrence, among other issues including low back pain and right knee pain. *Id.* Additional treatments occurred on October 19 and 23, 2020. Ex. 24. No physical examination is documented at that time. Petitioner was next seen on March 22, 2021 at Spine and Sports Chiropractic, for lower back, knee, and right shoulder pain. *Id.* at 3.

### III.     Affidavit Evidence

Petitioner submitted four affidavits in support of her claim. Ex. 3, 19, 25, 31. In her first, she asserts that she experienced stiffness and soreness in her left shoulder on October 5, 2018, the day she received the flu vaccination. Ex. 3 at 1. She also described an "unusual sensation of what felt like something coursing through the muscles from my left shoulder to the upper left side of my chest…." *Id.* at 1-2. Petitioner stated that she visited a chiropractor for left shoulder pain on October 26, 2018, however the "pain continued at the same severity the days following this treatment, so I discontinued chiropractic services for my shoulder." *Id.* at 2. Further, Petitioner states that she did not seek chiropractic care at times in 2019 because "I had previously attempted chiropractic care, it did not appear to make any difference." *Id.* at 7. Additionally, she states that she did not mention shoulder pain in December 2018 to P.A. Ake because that clinic appointment was a professional courtesy for a routine medication check to refill prescriptions. *Id.* at 6. Petitioner further detailed how her alleged injury has impacted her personally, professionally, and financially. *Id.* at 4-6.

Petitioner submitted a supplemental declaration on November 12, 2020, to address Respondent's position that she was treating regularly for shoulder pain at the time of the vaccination. Ex. 19 at 1. In it, Petitioner explained that prior to the vaccination, she was seen for back, shoulder, and neck pain associated with jumping off a dock in 2011. *Id.* But, she maintained, the location of the shoulder pain following the vaccine was in a completely different area. *Id.* at 2-3. Additionally, Petitioner stated that she has had

issues with her chiropractor's inaccurate records, pointing to the November 9, 2018, record specifically. *Id.* at 4.

Petitioner submitted a second supplemental declaration on February 14, 2022. Ex. 25. She asserts in it that her shoulder has improved due to certain procedures such as "the Graston treatments" and provided details regarding the pain associated with that technique. *Id.* at 2. Petitioner also stated that she still experiences a "dull ache 3-4 times / 7 nights" a dull ache "every now and then" while at rest, and pain for several days after significant exertion. *Id.* at 2-3. Further, she stated that her right shoulder began to hurt in December of 2020, and it was "hypothesized this was due to overuse / overcompensating for my left shoulder pain over the last 60 months." *Id.* at 1-2.

Petitioner submitted a third supplemental declaration on February 24, 2022. Ex. 31. Therein, she provides additional support regarding the onset of her injury in the form of corroborating text messages from an old phone, and text messages from 2020 regarding her shoulder pain. *Id.* at 1-6. Petitioner further explained events that affected her ability to seek additional medical treatment, including a need to make an appointment for her son with an allergist by the end of the year, a need to have stiches removed prior to the end of a year, selling their house, and coordinating the replacement of a water heater. *Id.* at 1-2.

Petitioner's wife, Nikki Johnson, submitted a declaration in support of this petition. Ex. 26. Mrs. Johnson described her recollection of Petitioner's injury course, and how it impacted her personal, professional, and family life. *Id.* at 1-6.

Stacie Birkland, Petitioner's friend, submitted a declaration dated February 23, 2022. Ex. 32. Ms. Birkland describes her recollection of Petitioner's shoulder pain, including the onset and severity. *Id.* at 1-2. She also states that Petitioner "was hesitant to seek medical attention" because "she was concerned of feeling dismissed." *Id.* at 2.

Petitioner's father, Charles Johnson, submitted a declaration dated February 23, 2022. Ex. 33. Mr. Johnson states that he recalls "the week after the [flu] shot [Petitioner] was complaining about her shoulder hurting." *Id.* at 1. He further describes his recollection of Petitioner's shoulder pain, including the onset, severity, and Petitioner's course of treatment. *Id.* at 1-2.

## IV.   Parties' Arguments

Petitioner argues that she is entitled to compensation because she meets the six-month severity requirement (Mot. at 3-8, Reply at 1-2) and the specific requirements for

a SIRVA as described in the Vaccine Injury Table. Mot. at 8-14, Reply at 2-3.[5] Respondent argues that Petitioner has not met the severity requirement of the Vaccine Act. Opp. at 11-12. Respondent further argues that Petitioner failed to show she suffered a Table claim because she had pre-existing bilateral shoulder pain, onset of her injury did not occur within 48 hours of her vaccination, her pain was not limited to her shoulder but radiated down her arm, and she did not have limited range of motion until five months after the vaccine. Opp. at 12-13.

## V.     Fact Findings and Ruling on Entitlement

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[6] a petitioner must establish that he suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;

---

[5] The parties' briefs also addressed Petitioner's success at establishing a causation-in-fact claim, but because I am determining that a Table claim has been demonstrated preponderantly, I do not discuss those arguments.

[6] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury.  *See* § 11(c)(1)(A)(B)(D)(E).

>   (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
>   (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

### A. Petitioner Meets the Severity Requirement

The first issue to be resolved is whether Petitioner has demonstrated that she suffered "residual effects or complications of [the injury alleged] for more than six months

after the administration of the vaccine," as required for eligibility under the Vaccine Program. Section 11(c)(1)(D)(i).

There is no dispute that Petitioner received the flu vaccine on October 5, 2018, and she therefore must demonstrate by preponderant evidence that her residual symptoms continued at least through April 5, 2019. *See, e.g., Herren v. Sec'y of Health & Human Servs.*, No. 13-100V, 2014 WL 3889070, at *2 (Fed. Cl. Spec. Mstr. July 18, 2014); *see also Hinnefeld v. Sec'y of Health & Human Servs.*, No. 11-328V, 2012 WL 1608839, at *4-5 (Fed. Cl. Spec. Mstr. Mar. 30, 2012) (dismissing case where medical history revealed that petitioner's Guillain-Barré syndrome resolved less than two months after onset).

The record establishes that Petitioner initially sought treatment for her shoulder injury on October 26, 2018. Ex. 4 at 57-58. However, Respondent argues that Petitioner's symptoms resolved shortly thereafter. Opp. at 1-12. And Petitioner's medical records from November 9, 2018, do indicate that her shoulder was "back to normal" by the end of October 2018. Ex. 4 at 59-60. Further, she did not report shoulder pain at three medical visits in November and December of 2018. Ex. 4 at 61-64, Ex. 6 at 9-11. And while Petitioner's March 13, 2019, visit with Dr. Norton indicated her shoulder pain began after the flu vaccine and was progressively increasing, the intermittent pain pattern is consistent with her preexisting shoulder problems and unrelated to the vaccination. Opp. at 11-12.

Petitioner's affidavit and witness statement, however, support her contention that she continued to experience left shoulder pain between November 2018 and March 2019. *See* Ex. 3 at 2. Petitioner also addressed why she did not mention her shoulder pain at the December 28, 2018, appointment with P.A. Ake, stating that the appointment was for a routine medication check. *Id.* at 6. Additionally, as Respondent notes, Petitioner later linked her left shoulder pain to the flu vaccine on March 13, 2019, indicating that she had continued to experience the effects of her injury since the vaccination. Ex. 6 at 13. Although a petitioner cannot establish the length or ongoing nature of an injury merely through self-assertion, the fact that a petitioner did not receive medical treatment for a solid/continuous six-month period does not necessarily mean that there are no remaining residual effects of the injury within the period. *See, e.g., Herren*, 2014 WL 3889070, at *3 (finding that petitioner suffered from residual symptoms that, due to their mild nature, did not require medical care).

More problematic for Petitioner is the statement in Dr. Graff's record stating that Petitioner's shoulder was sore for a few days following the October 26, 2018 appointment "but then back to normal." Petitioner contends that her shoulder injury did not resolve this

9

quickly, and Dr. Graff's notation was merely a mistake. *See* Ex. 19 at 4 (indicating Petitioner has had previous issues with inaccuracies in Dr. Graff's records). Further, she contends that she continued to experience shoulder pain in November 2018 but wanted Dr. Graff focus on other issues at that time because the previous chiropractic care was unsuccessful. Ex. 3 at 2.

While Dr. Graff's statements and the November 9, 2018 record contradict Petitioner's statements in her affidavit, after consideration of the entire record the evidence preponderantly supports (if barely)[7] a finding that severity has been met. While Petitioner's efforts to correct the offending record are not wholly persuasive, the fact that in subsequent contemporaneous records (within the severity period, no less) she related her injury to the vaccination, and that she did seek treatment for it in March and May 2019, all support severity. While this record overall may suggest Petitioner's SIRVA was not consistently a problem, that goes more to damages than whether the Vaccine Act's temporal severity requirement is met.

### B. Factual Findings Regarding a Table SIRVA

After a review of the entire record, I find that a preponderance of the evidence demonstrates that Petitioner has satisfied the QAI requirements for a Table SIRVA.

### 1. No Prior Left Shoulder Condition or Injury Would Explain Petitioner's Symptoms

The first requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination that would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i). Petitioner's records show she previously had bilateral shoulder, neck and back pain stemming from a 2011 injury that resulted in a neck sprain and muscle spasms. Ex. 12 at 2-3. Between 2011 and 2018, Petitioner was periodically seen primarily for neck and back pain. *See*, *e.g.*, Ex. 21 at 4-5 (physical therapy records from January 12, 2012 to February 23, 2012 for neck and low back pain); Ex. 20 at 11-12 (chiropractic records for treatment related to cervical spine tension); Ex. 4 at 43-44 (record from June 5, 2017 relating to left-sided neck and mid-back pain). However, there is one report of left shoulder pain from 2016. See Ex. 4 at 29-30 (record from September 30, 2016, reporting left shoulder pain that began the day before). Petitioner explained that the shoulder pain associated with the 2011 injury was in a completely different area than her alleged SIRVA. Ex. 19 at 2-3. This is corroborated by

---

[7] At worst, this case represents a "close-call," and in "the Vaccine Program, petitioners are accorded the benefit of close calls." *Roberts v. Sec'y of Health & Human Servs.*, No. 09-427V, 2013 WL 5314698, at *10 (Fed. Cl. Aug. 29, 2013).

the treatment records, which indicate Petitioner was being treated for cervical spine tension, upper back pain, and shoulder pain prior to her vaccination. Ex. 20 at 11-12, Ex. 4 at 29-30.

Given that the last complaints of left shoulder pain occurred two years prior to the vaccine, and the 2011 injury does not seem to implicate Petitioner's shoulder, I find that Petitioner's pre-vaccination injury would not explain the symptoms experienced after the vaccination. Further, she has demonstrated no other condition that would explain her symptoms. Therefore, Petitioner meets this requirement.

### 2. Onset of Petitioner's Injury Occurred within Forty-Eight Hours of her Vaccination

The medical records also establish onset of her injury close-in-time to vaccination. Petitioner first sought treatment approximately three weeks after her October 5, 2018 vaccination. In the subsequent timeframe, she consistently reported to treaters that she had experienced symptoms since the vaccination. Ex. 4 at 57 (October 26, 2018, record stating that she had a flu shot and had pain "since then"); Ex. 6 at 13 (record from March 13, 2019 stating that Petitioner was seen for "sore left shoulder after influenza injection on 10-5-2018" and "pain started that night"); Ex. 7 at 1-4 (physical therapy records from March 26, 2019 stating that onset of Petitioner's pain was October 5, 2018). These statements, while temporally vague, are not *inconsistent* with a proper Table onset.

Respondent observes, however, that the October 26, 2018 record states Petitioner had a flu shot "earlier [that] week" and had pain "since" the vaccination. Opp. at 13. While "since" is a vague term, and the literal date reported for vaccination is erroneous, a single reference that incorrectly indicates the date Petitioner received the vaccine is not enough to outweigh the other evidence. Otherwise, such a record *does* connect the vaccination to the onset of pain – and later records correctly state the vaccination date. *See,* e.g., Ex. 4 at 57; Ex. 6 at 13; Ex. 7 at 1-4. Petitioner's affidavits provide additional corroborating evidence for onset of her injury. Ex. 3 at 1.

Also, the October record shows that Petitioner reported shoulder pain in a relatively timely manner (*i.e.* within a month of vaccination). It is common for SIRVA petitioners to delay seeking treatment, thinking the injury will resolve on its own, since patients are often told by medical providers at the time of vaccination to expect some soreness and pain for a period of time after. And individuals also often misconstrue the nature of their injury, and may not inform treaters of all specific facts relevant to its onset until later. Here, the added detail of onset did not "wait" for months before being provided, but began to be reported in a reasonable time post-vaccination.

Accordingly, and based upon the above, I find there is preponderant evidence that establishes the onset of Petitioner's left shoulder pain was more likely than not within 48-hours of vaccination. The fact that Petitioner did not delay significantly in seeking treatment, and consistently reported pain associated with the vaccination, weigh in her favor, even if some onset references are imprecise, or if a single incorrect onset citation (not otherwise repeated in the record) has been identified.

### 3. Petitioner's Pain was Limited to her Left Shoulder

I also find that there is a preponderance of evidence that Petitioner's pain was limited to her left shoulder. Respondent claims that Petitioner does not meet this criteria because on October 26, 2018, she reported pain in her left arm, pectoral area, and that it felt "like her veins were 'pulsing' in her left pectoral area" the day after the vaccination. Opp. at 13.

Even though the record contains reports of non-shoulder pain complaints from October 26, 2018, additional records indicate that Petitioner's pain was limited to her shoulder. *See*, *e.g.*, Ex. 6 at 13 (reporting a sore left shoulder); Ex. 7 at 10-14 (describing pain as mild aching at the tip of her left shoulder). Further, this is not a case where the bulk of Petitioner's complaints included an area broader than the shoulder region. On the contrary – there is only a single record that contains complaints of pain outside the shoulder region. Accordingly, preponderant evidence establishes that Petitioner's pain was limited to her left shoulder.

### 4. There is No Evidence of Another Condition or Abnormality

The last criteria for a Table SIRVA state that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). As discussed above, Petitioner's prior history includes reports of bilateral shoulder pain associated with a 2011 injury. Ex. 21 at 4-5; Ex. 20 at 11-12; Ex. 4 at 43-44. But the records also indicate that Petitioner complained of left shoulder pain only once, and several years prior, to her vaccination. Ex. 4 at 29-30. Further, Petitioner explained that the shoulder pain associated with the 2011 injury was in a completely different area than her alleged SIRVA. Ex. 19 at 2-3.

Because there are no complaints of left shoulder pain for two years prior to Petitioner's vaccination, it is more likely than not that her prior injury would not explain Petitioner's current symptoms. Additionally, Respondent does not contest that Petitioner

meets this criterion for a Table SIRVA. Therefore, I find that Petitioner satisfies this requirement.

### C. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). The overall record contains preponderant evidence to fulfill these additional requirements.

The record shows that Petitioner received a flu vaccine intramuscularly on October 5, 2018, in the United States. Ex. 1 at 1; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for her injury. Ex. 3 at 9; Section 11(c)(1)(E) (lack of prior civil award).

As stated above, I have found that Petitioner has met the table requirements for a SIRVA. *See* 42 C.F.R. § 100.3(c)(10)(ii) (setting forth this requirement). I also found that Petitioner meets the severity requirement, and has suffered the residual effects of her injury for more than six months. *See* Section 11(c)(1)(D)(i) (statutory six-month requirement).

Based upon all of the above, Petitioner has established that she suffered a Table SIRVA. Additionally, she has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

## VI. Damages

The parties have also briefed damages in this case. Petitioner requests an award of $100,000.00 for actual pain and suffering and $1,070.76 for unreimbursed out-of-pocket expenses. Mot. at 22; Reply at 7. Respondent argues that the record only supports an award of $50,000.00 for past pain and suffering, and $804.51 for out-of-pocket expenses. Opp. at 22.

### A. Legal Standards for Damages Awards

In several recent decisions, I have discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within the SPU. I fully adopt and hereby incorporate my prior discussion in Sections III and IV of *Leslie v. Sec'y Health & Hum. Servs.*, No. 18-0039V, 2021 WL 837139 (Fed. Cl. Spec. Mstr. Jan. 28, 2021) and *Johnson v. Sec'y of Health & Hum. Servs.,* No. 18-1486V, 2021 WL 836891

13

(Fed. Cl. Spec. Mstr. Jan. 25, 2021), as well as Sections II and III of *Tjaden v. Sec'y of Health & Hum. Servs.,* No. 19-419V, 2021 WL 837953 (Fed. Cl. Spec. Mstr. Jan. 25, 2021).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[8]

### B. Appropriate Compensation for Pain and Suffering

In this case, awareness of the injury is not disputed, leaving only the severity and duration of that injury to be considered. In determining appropriate compensation for pain and suffering, I have carefully reviewed and taken into account the complete record in this case, including all medical records, declarations, plus all filings submitted by both Petitioner and Respondent. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

Ms. Johnson requests an award of $100,000.00 for actual pain and suffering. Mot. at 22; Reply at 7. She asserts that the severity of her injury is comparable to *Cooper*.[9] In particular, Petitioner emphasizes that she suffered from shoulder pain for over three years, sought treatment soon after her vaccination, and treated through physical therapy, chiropractor treatments, and various medications. Mot. at 18-22.

Respondent, by contrast, submits that an award of $50,000.00 is appropriate for pain and suffering (assuming entitlement is found). Opp. at 18-21. Respondent argues that Petitioner suffered a comparatively minor injury and received only conservative treatment including "a handful of acupuncture visits, two PT visits, ibuprofen, and one round of prednisone." Opp. at 18. Further, no medical records reports of left shoulder pain

---

[8] *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

[9] *Cooper v. Sec'y of Health & Hum. Serv.*, No. 16-138V, 2018 WL 6288181 at *12 (Fed. Cl. Spec. Mstr. Nov. 7, 2018) (awarding $110,000.00 in pain and suffering).

past October 2020, two years after her vaccination. *Id.* Respondent cites to two cases in support of his argument: *Mejias v. Sec'y of Health & Hum. Serv.*, No. 19-1944V, 2021 WL 5895622 (Fed. Cl. Spec. Mstr. Nov. 10, 2021*)* (awarding $45,000.00 for past pain and suffering); *Ramos v. Sec'y of Health & Hum. Serv.*, No. 18-1005V, 2021 WL 688576 (Fed. Cl. Spec. Mstr. Jan. 4, 2021) (awarding $40,000.00 for actual pain and suffering).

Based on the medical records, Petitioner suffered a mild SIRVA and some lingering pain for approximately two years, with multiple multi-month gaps in treatment. Petitioner initially reported arm pain on October 26, 2018, approximately one month after her vaccination. Ex. 4 at 57-58. Petitioner next reported shoulder pain almost five months later on March 13, 2019. Ex. 6 at 13.

Petitioner attended two physical therapy sessions, one on March 26, 2019 and another on May 6, 2019. Ex. 7 at 1-4, 10-14. During that time, her pain and symptoms were reportedly mild, and ranged from one-to-five out of ten. Ex. 7 at 1-4, 10-14. Petitioner next reported shoulder pain approximately five months later on August 19, 2019. On February 10, 2020, Petitioner again sought care for shoulder pain, and reported her average pain levels were one-to-two out of ten. Ex. 11 at 2. Eight months later, in October of 2020, Petitioner reported daily low-grade shoulder pain. Ex. 22.

These factors indicate that Petitioner's SIRVA was fairly mild for approximately two years. Further, Petitioner's treatment was conservative and sporadic, with two physical therapy sessions in 2019, and various visits to medical practitioners. However, Petitioner did not receive any steroid injections, did not undergo surgery, and had very limited diagnostic testing.

The overall severity of the injury at issue herein is not nearly high enough to warrant the $100,000.00 requested by Petitioner in her motion. I note that the SIRVA cases cited by Petitioner involved more significant treatment over longer periods of time. For example, the *Cooper* petitioner's treatment consisted of thirty-five physical therapy session over two years, and moderate pain reported for that time. *Cooper*, 2018 WL 6288181 at *12. In contrast, here Petitioner attended only two physical therapy sessions and reported significantly lower pain levels throughout her treatment period.

I agree with Respondent that this case is more comparable to cases that awarded below-median amounts for a SIRVA. Opp. at 19-21. In particular, this case is most analogous to *Allner v. Sec'y of Health & Hum. Serv.*, No. 19-1048, 2022 WL 6962656 (Fed. Cl. Spec. Mstr. Sept. 9, 2022) (awarding $60,000.00 for actual pain and suffering). Both Petitioner and the injured in *Allner* experienced a mild SIRVA, underwent treatment over several years, and exhibited a good recovery. *Id.* at *5-6. However, *Allner* included

additional treatment that Petitioner did not undergo, including five steroid injections and two MRI scans.

I also note that, like in *Allner*, Petitioner required minimal treatment or medical intervention for significant periods of time. Notably, there are multiple, lengthy gaps in Petitioner's treatment, suggesting that her pain was not so severe as to require frequent medical attention. Specifically, Petitioner appears to have received no formal treatment for her shoulder injury during the following time periods: 1) approximately four months between October 26, 2018 (Ex. 4 at 57-58) and March 19, 2019 (Ex. 6 at 13); 2) approximately four months between her second physical therapy session on May 6, 2019 (Ex. 7 at 10-14) and when she saw Dr. Norton for left shoulder pain on August 19, 2019 (Ex. 9 at 2); 3) approximately four months between August 19, 2019 (Ex. 9 at 2) and when she next sought care on February 10, 2020 (Ex. 11 at 2); and 4) approximately nine months between February 10, 2020 and when she sought care on October 16, 2020. Ex. 22. The fact that Petitioner could cope with her injury during these periods counsels in favor of a lower pain and suffering award.

Taking all of the above into account, I find that $50,000.00 for pain and suffering is appropriate in this case.

### C.  Unreimbursed Out-Of-Pocket Expenses

Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment awarding such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation ... determined to be reasonably necessary." Section 15(a)(1)(B). Petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer*, 1996 WL 147722, at *22-23.

Petitioner seeks $1,070.76 for medical expenses related to her shoulder. Mot. at 22. Respondent agrees to $804.51 of the expenses, but contests expenses that he argues are unrelated to Petitioner's SIRVA. Opp. at 21-22.

The expenses Petitioner seeks compensation for include chiropractic visits in February of 2020[10] and March of 2021, and amazon purchases from August and October of 2020, and March of 2021. Opp. at 21, Ex. 27 at 1, 7-9. The February 8, 2020

---

[10] Petitioner's itemized damages lists a February 8, 2020 visit to Spine & Sports Chiropractic. Ex. 27 at 1. However, the date appears to be an error as the medical records indicate the appointment occurred on February 3, 2020.

chiropractic visit appears at least related to care for Petitioner's SIRVA, and thus is compensable under the Vaccine Act. Ex. 7 at 1. However, other treatments and purchases are too attenuated to be properly associated with her SIRVA. For example, the chiropractic care on March 22, 2021 pertained to Petitioner's right shoulder, not her left. Ex. 24. Further, the purchases including an ice pack on August 28, 2020, a massage stick on October 26, 2020, and a body pillow on March 15, 2021 do not temporally relate to any treatment records or care for her SIRVA. Moreover, it is unclear whether those purchases were for treating Petitioner's SIRVA, or other of her chronic injuries including knee and back pain.

Therefore, based on the above, I award $877.46 for past unreimbursed expenses.

## Conclusion

In view of the evidence of record, I find that there is preponderant evidence that Petitioner has satisfied the Table requirements for a SIRVA and is entitled to compensation.

I also find that, for all of the reasons discussed above and based on consideration of the record as a whole, **$50,000.00 represents a fair and appropriate amount of compensation for Ms. Johnson's actual pain and suffering. I also award $877.46 for past unreimbursed medical expenses.**[11]

**IT IS SO ORDERED.**

s/Brian H. Corcoran  
Brian H. Corcoran  
Chief Special Master

---

[11] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. See § 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).